# In re BAUERNSCHMIDT'S ESTATE.*

*Power of Disposition Annexed to Estate for Life—Deed of Trust in Excess of the Power—Family Corporation—Shares of Stock in Names of Husband and Wife as Joint Tenants—Sale of Corporate Property by Real Owner—Acquiescence by Nominal Shareholders— No gift of Securities by Husband to Wife by Renting Safe Deposit Box in Joint Names with Equal Right of Access—Deed of Trust Valid in Part and Void in Part.*

A testator gave the residue of his estate to his wife for the term of her natural life with full power to her to sell, mortgage, lease and transfer the said property, or any part thereof and to deal with the same for her sole benefit and at her sole discretion. By a subsequent clause of the

*The docket title of this case was *Margaretha Bauernschmidt et al.* v. *Frederick Bauernschmidt et al.*—*The Baltimore Trust and Guarantee Co., Trustee,* v. *Frederick Bauernschmidt et al.*

will the testator provided that upon the death of his wife, the residue of his estate then being should be divided into equal shares and distributed to his children. *Held*, that the testator did not intend that his wife should have the power to dispose of the estate in such a way as to defeat the remainders to his children, but the powers annexed to her life estate related to the management of the estate, and that consequently she was not empowered to execute a deed of trust of the property by which, upon her death, the testator's children take merely equitable life estates with remainders over to their respective children, instead of the full beneficial ownership given by the testator.

The owner of a brewery transferred the property and business to a corporation and caused a few of the shares of stock to be put in the names of his children and the greater part to be put in the names of himself and his wife as joint tenants. No consideration was paid by any of these persons for such shares of stock and the owner of the brewery continued to deal with the corporation and the shares as his own property and this course of dealing was acquiesced in by the other shareholders. Subsequently the brewery was sold to a syndicate and all of the shares of stock so issued were transferred to the purchaser with the acquiescence of the shareholders, and the purchase price was paid in money and securities to the owner of the brewery. He then gave to his children sums of money in excess of the value of the shares of stock held by them. *Held*, that upon his death, his widow did not become entitled to any part of the money or securities paid for the brewery in consequence of having been designated as joint tenant of the shares of stock held by her husband in the manner above mentioned.

A man rented a box in a safe deposit company in the names of himself and wife under an agreement which set forth that they held it " as joint tenants the survivor to have access thereto in case of the death of either." He gave to his wife one of the two keys to the box and retained the other and either of them could have access to the box separately. The bonds and other valuables which were put into the box were then the property of the husband. He frequently said when speaking of himself and his wife that whoever lived the longest should have everything that was left. Upon the death of the husband it was contended that the securities in the box had passed to the wife by way of gift. *Held*, that the husband had made no perfected gift of this property because he retained the power during his lifetime to deal with it as he pleased, and the mere fact that his wife had a right of access to the box did not operate to change the title to the contents of the box or constitute a complete delivery of possession and dominion to her and a parting with dominion by the husband.

The real owner of all of the shares of stock of a corporation, although some of them were in the names of members of his family, sold the business of the corporation and all of the shares were transferred to the purchaser. After his death certain property was found to remain in the name of this corporation. *Held*, that this property belongs to

the estate of the deceased owner and that the members of his family who had been shareholders in the corporation had no power to transfer it.

A tenant for life of property with power of sale, etc., annexed conveyed this property to a trust company in trust for herself for life with certain remainders over. The provisions in the conveyances as to these remainders were invalid because not authorized by the will under which the property was given to the tenant for life. The deed of trust also conveyed property which belonged absolutely to the grantor. *Held*, that the deed was valid as to this latter property and also as to the grantor's life estate in the other property but was invalid as to the remainders thereafter attempted to be created.

Appeal from a decree of Circuit Court, No. 2, of Baltimore City (WICKES, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Isidor Rayner* and *Thomas C. Weeks* for Margaretha Bauernschmidt *et al.*, appellants.

First. Did the securities in box No. 4392 in the Mercantile Trust and Deposit Company belong to Margaretha Bauernschmidt, the widow of George Bauernschmidt, by virtue of the transfer of the said box and the securities therein to her, made by her husband on the 13th day of March, 1899, and by virtue of his acts accompanying the said transfer? This question is settled in *favor of the* mother and against the contention of the two protesting sons, the appellees in this case, by the following decisions in this State. *Brewer* v. *Bowersox*, 92 Md. 572; *Baker* v. *Hedrich*, 85 Md. 645; *Metropolitan Savings Bank* v. *Murphy*, 82 Md. 314.

One of the principal tests that this Court has applied in all the Maryland cases upon the subject of gifts *inter vivos* relates to the original ownership of the property. *Baker* v. *Hedrich*, 85 Md. 645. To whom did these securities originally belong? It requires no authority for the proposition that if they would have passed to Margaretha Bauernschmidt without any gift or delivery from her husband, then the gift and delivery were superfluous and unnecessary acts.

Now the testimony shows without contradiction that the securities in the box No. 4392 belonged originally to the George Bauernschmidt Brewing Co. If they belonged to the George Bauernschmidt Brewing Company then they passed to her without any gift or delivery because she and her husband were the sole owners of all the stock of the George Bauernschmidt Brewing Company, they holding 140 shares out of 200, the other 60 shares that were held by the children having been surrendered and all their claims against the brewery being released.

One hundred and forty shares of the George Bauernschmidt Brewing Company stood in the name of George Bauernschmidt and Margaretha Bauernschmidt and the survivor. The whole capital stock of the brewing company consisted of two hundred shares; therefore, George Bauernschmidt and Margaretha Bauernschmidt, his wife, and the survivor were entitled to fourteen-twentieths parts of these securities. In the remaining six-twentieths each of the two sons who are the contestants in this case would have been entitled to a one-twentieth portion; therefore, it is perfectly clear that if these securities belonged to the George Bauernschmidt Brewing Company, that as to the fourteen-twentieths part thereof, they passed to the widow, Margaretha Bauernschmidt, as the survivor upon the death of her husband, because she was joint owner with her husband of 140 shares out of a total capital of 200 shares of said company; that as to said fourteen-twentieths part of these securities, therefore it required no gift or delivery from her husband, because they passed to her upon her husband's death as the surviving owner of the stock; that as to the remaining one-twentieth portion to which each of the sons would be entitled, it is respectfully submitted that they relinquish all claims thereto; that each of them having received one hundred and fifty thousand dollars ($150,000.00), far in excess of their one-twentieth interest in the property of the brewing company, and having given the release hereinbefore set forth, are now estopped and will not be allowed to question the right of their

mother, *to the securities in this box if they belonged to the George Bauernschmidt Brewing Company.*

It must be further observed, as a matter of fact, that this one-twentieth interest in the George Bauernschmidt Brewing Company represented nothing at the time of George Bauernschmidt's death, because during his lifetime he had disposed of all the property of the George Bauernschmidt Brewing Company, first, by transfer to the Baltimore Realty Company, and secondly, by the transfer of this box, No. 4392, of the George Bauernschmidt Brewing Company to himself and wife as tenants by the entireties as is hereinbefore fully shown.

It is the appellee's duty to show under this bill to administer the estate of George Bauernschmidt that the executrix has failed to return to the Orphans' Court property of her testator. They have utterly failed to show this, and the only testimony in the record upon the subject is that the securities in this box, No. 4392, belonged to the George Bauernschmidt Brewing Company and therefore passed to her as the surviving owner of its stock.    There is no testimony whatever that they belonged to George Bauernschmidt individually.

Assuming now, simply for the sake of argument, that these securities belonged to George Bauernschmidt at the time of his death, it is insisted that the rights of Margaretha Bauernschmidt are equally clear thereto under the cases of *Brewer* v. *Bowersox*, 92 Md. 572; and *Metropolitan Savings Bank* v. *Murphy*, 82 Md. 314.    Margaretha Bauernschmidt was a tenant by the entireties of the said securities, by virtue of the transfer from her husband to her, and everything was done by the husband that could possibly be done to make her, by a gift *inter vivos* a tenant by the entireties with him of the same.    He could not do any more than he did to create this tenancy in them. His unequivocal declarations uncontradicted in the testimony, his deliberate purpose to give these securities to his wife in the manner indicated, having given his children far more than what they were entitled to, the joint renting of the box and the transfer of the key thereof to his wife and his ceasing forthwith to exercise any further control over these securities all bring this transaction clearly within the cases cited.

A suggestion has been made that both George Bauern-schmidt and his wife had the right to enter the box severally by the terms of the renting, and that, therefore, there was no tenancy by the entireties. It is submitted that there is no force in this suggestion, because the right to enter the box for the purpose, for instance, of collecting coupons or for any other legitimate purpose is one thing, and the right to take and appropriate the property is another. It will not be inferred that the mere right to enter the box severally, as a matter of form, according to the custom of the Safe Deposit Company, as is shown by the testimony, could possibly destroy a tenancy by the entireties, by the husband and wife. Even a devise at common law to two persons to hold jointly and severally constitutes a joint tenancy. 2 *Blackstone Commentaries*, 192 and 193. Besides this, in the case of *Metropolitan Savings Bank* v. *Murphy*, and in some of the other Maryland cases, the fund was left payable to the order *of either party*, but that circumstance alone was not considered of *sufficient significance* by this Court to destroy the validity of the gift.

Second. As to the will. Assuming for the sake of argument, that all the securities (except those which manifestly belonged to Mrs. Bauernschmidt individually and to Elizabeth Bauernschmidt and which she could dispose of as she wanted) belonged to George Bauernschmidt, and were his property at the time of his death, then did Margaretha Bauernschmidt have the right and the power under the will to make the disposition that she did of the same.

We claim that the intention of the testator was to give his wife a life estate with *absolute dominion of his estate*, and then to give his children *the remainder in such property as was in possession of his wife at the time of her death. This is the only construction that harmonizes the will, any other construction destroys it.* The will shows that having entire confidence in his wife, he was perfectly willing to invest her with absolute discretion to make such disposition of his property as she deemed wise and proper. The whole testimony in this case shows that he felt and knew that his wife would not do anything that was

detrimental to the interests of the children. He was willing, as the testimony and the will both show, to take the risk of his wife's management and unrestricted control of the estate, and her conduct shows that he made no error in the absolute confidence that he reposed in her. If the question had been asked the testator, why under this will your wife could dispose of all your property and deprive your children of all their rights ? if the testimony in this case furnishes a guide to his motives, his answer would have been : "I have no fear that my wife will commit any wrong against the children."

In order, therefore, to arrive at the intention of the testator, it will not do to assert that if our construction of the will is right that the wife could appropriate the whole estate to herself, because the answer to that proposition would be that the will and testimony both show that the husband knew that the wife would not be guilty of such an act of injustice. There is no contention here that the wife took an estate in fee under the will. Our contention is that the deed of trust and gifts were made in pursuance of the absolute dominion over the whole of his estate, that the husband had reposed in the wife, which proposition is entirely consistent with the other proposition, that the remainder should remain intact as to all property held by the wife at the time of her death. *Scott* v. *Keane,* 87 Md. 709; *Mills* v. *Bailey,* 88 Md. 320.

In other Courts similar powers have been passed upon, which, upon examination, will be found were not worded nearly as broadly as this, but which it was held carried with them the right to make absolute disposition of the property in question, and to which the Court is referred as absolutely settling the construction that the appellant puts upon the power contained in this will. These are all well considered cases selected from an innumerable list of authorities as upholding the same principle. In fact, the decisions all tend in one direction, and the appellant has not been able to find a single case of a will with as unlimited a power as this in which any Court has adopted the same construction claimed by the appellees. *Cain* v. *Cain,* 29 Southern Rep. 846 ; *Richardson* v.

*Richardson,* 80 Me. 585; *Small* v. *Thompson,* 92 Me. 539; *Shapleigh* v. *Shapleigh,* 44 Atl. Rep. 107; *Dodge* v. *Moore,* 100 Mass. 335; *Kent* v. *Morrison,* 153 Mass. 137; *Legget* v. *Firth,* 132 N. Y. 7; *Greystone* v. *Clark,* 41 Hun. 125; *Thomas* v. *Wolford,* 49 Hun. 145; *Burleigh* v. *Clough,* 52 N. H. 267; *Simpson* v. *French,* 6 Demarest Surr. 108; *Stroud* v. *Morrow,* 7 Jones Law (N. C.) 463; *Ramsdell* v. *Ramsdell,* 21 Me. 288; *Shaw* v. *Hussey,* 41 Me. 495; *Copeland* v. *Brown,* 72 Me. 206; *Roleson* v. *Shotwell,* 55 N. J. Equity, 318.

*John N. Steele,* for the Baltimore Trust and Guarantee Co., appellant.

*Louis P. Hennighausen, Edgar H. Gans* and *William S. Bryan, Jr.,* for the appellees.

Taking the whole will together, it is manifest that it was the intention of the testator to give his wife only a life estate in the residue of his estate, without impeachment for waste, and with power to change the investments from time to time, with a charge upon that residue after her death to pay her funeral expenses and her *bona fide* debts, and *not* to give her the power to defeat and disappoint by any *gift* of the property made by her in her lifetime, or by any will, the legacies and devises to his children after her death.

Of course, in construing any will, the cardinal rule is to ascertain the *intention* of the testator. *Smith* v. *Bell,* 6 Peters, 68; *Russell* v. *Werntz,* 88 Md. 212. And in arriving at that intention, it is a canon of construction that the Court will never presume, without express words, or *necessary implication,* to that effect, that the heir was to be disinherited. *Allen's Excr.* v. *Allen,* 18 How. 291; *Fitch* v. *Weber,* 6 Hare, 145; *Bradley* v. *Westcott,* 13 Vesey, 445; *Dashwood* v. *Peyton,* 18 Vesey, 40.

It is not conceivable, it is respectfully submitted, that the testator would have made the elaborate provision as to what was to be done with his estate after the death of his wife, if he had intended to give her the absolute power *at her discre-*

*tion* to defeat his just and equal provisions for his children. It is submitted that it is very clear that his desire was to provide fully for the comfortable maintenance of his wife during her remaining days, and that after her death his children should, on an equality, enjoy his estate. See *Russell* v. *Werntz*, 88 Md. 215; *Brant* v. *Coal Co.*, 93 U. S. 326; *Garland* v. *Smith*, 64 S. W. Rep. 188; *Johnson* v. *Johnson*, 51 Ohio St. 446; *Miller* v. *Potterfield*, 86 Virginia, 876; *Goudie* v. *Johnston*, 109 Indiana, 427; *Smith* v. *Bell*, 6 Peters, 68; *Bradley* v. *Westcott*, 13 Vesey, 445; *Dashwood* v. *Peyton*, 18 Vesey, 40.

*As to the gift by George Bauernschmidt to his wife, of the securities in the Safe Deposit boxes now claimed by the appellant as her property.* To make an effectual delivery of a gift *inter vivos*, it is necessary that all dominion or control over the gift delivered shall pass out of the donor into the donee. *Nickerson* v. *Nickerson*, 28 Md. 332; *Milholland* v. *Whalen*, 89 Md. 212; *Gorman* v. *Gorman*, 87 Md. 348, 349, etc.; *Balto. Retort and Brick Co.* v. *Mali*, 65 Md. 93; *Taylor* v. *Henry*, 48 Md. 557.

The Court is now asked to construe the *access* to the property placed in the box for safe-keeping, as a complete gift of the property to the survivor; the hiring of a box jointly, etc., cannot transfer title of the contents deposited therein. In the case of *Bangor Electric Light and Power Company* v. *Robinson*, 52 Fed. Rep. 520, Robinson had deposited a certificete of stock in a box in the Boston Safe Deposit and Trust Company, under such circumstances that both Robinson and a broker had access to it. The broker sold the certificate to an innocent third party; held, that no title passed, pages 522 and 523 (9 Harvard Law Review, 142.) If there is no complete delivery, then our statutes prescribe the form of transfer of title to choses in action.

If money deposited in a Savings Bank as joint owners, payable to the order of either and the survivor, does not of itself constitute a gift—*Whalen* v. *Milholland*, 89 Md. 199—how can mere access do it? Why did the survivor find it necessary to administer on part of securites contained in the

box as a part of the personal estate of the deceased? The testimony shows that these securities were the individual property of George Bauernschmidt at the time he placed them in the box for safe keeping.

McSHERRY, C. J., delivered the opinion of the Court.

George Bauernschmidt had been engaged in the brewery business for some years and had amassed considerable property. His family consisted of himself, his wife and seven children. In eighteen hundred and eighty-nine he determined to conduct his business through and in the name of a corporation and accordingly he procured a certificate of incorporation creating the George Bauernschmidt Brewing Company. All the stockholders were members of his family. The property and business taken over by the corporation were his individually, the other incorporators having no interest in that property or that business; and it is not pretended that they gave any value whatever for the shares of stock which were issued to them. Upon the organization of the company certificates of stock were issued representing a total of two hundred shares, the number fixed in the articles of incorporation. Of those two hundred shares he retained one hundred and ninety-six and gave one to each of four of his children. Subsequently there was a new and different division made of the shares and later on, one of the children having died, the distribution of the shares was again rearranged and new certificates were issued. Under this last arrangement one hundred and forty shares were issued to George Baurenschmidt and Margaretha Baurenschmidt, his wife, as joint tenants; and ten shares to each of their six surviving children. In eighteen hundred and ninety-eight The Maryland Brewing Company was incorporated to take over and consolidate all the brewery business in Baltimore City. The George Baurenschmidt Company sold certain of its property and its whole business to the syndicate which organized the Maryland Brewing Company, and the price agreed to be paid was one million of dollars in cash and one million of dollars in stock of the new corporation—pre-

ferred and common in equal amounts. Before that sale could be consummated the purchasers required the stockholders of the George Baurenschmidt Company to transfer in blank and to deliver to Sperry, Jones & Company, who were promoting the new enterprise, all the certificates of the capital stock of the Bauernschmidt Company ; and this was done on March the first, eighteen hundred and ninety-nine. Frederick Bauernschmidt, one of the sons who held a certificate for ten shares, was opposed to the scheme of selling to the Maryland Brewing Company. Without going into the details, because it is unnecessary to do so, it is enough to say that after some delay George Baurenschmidt agreed to give Frederick the sum of one hundred and fifty thousand dollars and thereupon Frederick transferred to his father the certificate which the former held for ten shares of the Bauernschmidt Company's stock. On the first of March, eighteen hundred and ninety-nine the sale to the Maryland Brewery Company was completed and a conveyance was duly executed. George Bauernschmidt then gave to each of his other five children a like sum of one hundred and fifty thousand dollars, though some of them did not receive the money until after his death. He had for some years rented from several of the Trust and Security Companies of Baltimore safe deposit boxes in which his own and the Bauernschmidt Brewing Company's investments were kept ; but he always retained the keys himself. After the consummation of the deal with the Maryland Brewing Company and on March the thirteenth, eighteen hundred and ninety-nine, one of the boxes, viz., box No. 4392 in the Mercantile Trust and Deposit Company which had stood in the name of the Bauernschmidt Brewing Company, was surrendered and was then re-rented to George and Margaretha Bauernschmidt to be entered severally under the following agreement: "We agree to hire and hold safe No. 4392, or any safe for which it might be exchanged, as joint tenants, the survivor or survivors to have access thereto in case of the death of either." George Bauernschmidt gave to his wife one of the two keys to the box and retained the other, saying to her "here is your key to the safe-deposit box."

On December the thirtieth, eighteen hundred and ninety-eight, whilst negotiations were pending for the sale of the Bauernschmidt brewery to the Maryland Brewery Company, George Bauernschmidt with three of his children and one of his employees organized a corporation called the Baltimore Realty Company whose chief object was to acquire and hold all the property of the Bauernschmidt Brewery Company which was not to be included in the sale to the Maryland Brewery Company. The capital stock was fixed at one hundred thousand dollars, divided into one thousand shares of the par value of one hundred dollars per share. The stock was issued as follows: Nine hundred and eighty shares to George and Margaretha Bauernschmidt as joint tenants and five shares to each of four of his children—the two who were excluded being those who filed the bill of complaint by which the pending proceedings were begun. On the first of March, eighteen hundred and ninety-nine the Bauernschmidt Brewery Company conveyed considerable property to the Realty Company and assigned to the latter sundry mortgages, which property and mortgages it was agreed should be received in payment for the entire issue of stock of the Realty Company. None of these conveyances or assignments embraced bonds, stocks or other like securities, except some judgments.

On April the fourth, eight hundred and ninety-nine, George Bauernschmidt, then being quite ill, made his last will and testament and on the twelfth of the same month he died. By his will he gave to his widow a life estate in all his property coupled with certain powers which will be stated and considered later on. After the expiration of the life estate he directed "the rest, residue and remainder of" his "said estate then being" to be equally divided amongst his six children—the share of one of them, who was afflicted, being placed in trust.

On July the twenty-sixth, eighteen hundred and ninety-nine, or a little more than three months after the death of George Bauernschmidt, Mrs. Bauernschmidt executed a deed of trust to the Baltimore Trust and Guarantee Company conveying upon certain trusts six hundred and fifty thousand dollars of

securities.   This sum of six hundred and fifty thousand dol-
lars was made up of the following items : Three hundred and
twenty-six thousand dollars in bonds which were in box No.
4392 of the Mercantile Trust Company.    That box stood, as
has been stated already, in the names of George and Marga-
retha Bauernschmidt as joint tenants.    One hundred and
seventeen thousand dollars in bonds which the evidence shows
had been purchased by Mrs. Bauernschmidt ; seven thousand
dollars in Baltimore City stock held by the Bauernschmidt
Brewery Company, but transferred to Mrs. Bauernschmidt on
May the eleventh, eighteen hundred and ninety-nine ; sixty
thousand dollars in stocks and bonds transferred by the Realty
Company to Mrs. Bauernschmidt on August the twenty-eighth,
eighteen hundred and ninety-nine ; ninety thousand dollars in
bonds of which eighty-five thousand and five hundred dollars
were registered in the name of George Bauernschmidt and are
accounted for in the inventory filed by his executrix ; and
fifty thousand dollars in City and Suburban Railway bonds
which were the sole property of Elizabeth Bauernschmidt—
the afflicted daughter.    These latter were purchased with part
of the one hundred and fifty thousand dollars given to Eliza-
beth by her father when he paid Frederick the like sum for
his ten shares of stock.

On September the seventh, eighteen hundred and ninety-
nine, Mrs. Bauernschmidt conveyed to the Baltimore Realty
Company certain mortgages which had been executed to
George Bauernschmidt ; and the conveyance purports to have
been made in accordance with and by virtue of the powers
conferred upon her by the will of her husband.

On September the fifth of the same year Mrs. Bauernschmidt
stated her first account as executrix in the Orphans' Court of
Baltimore City.    In that account none of the securities con-
veyed by the deed of trust, except the eighty-five thousand
five hundred dollars above mentioned, and none of the mort-
gages transferred to the Realty Company by the conveyance
of September the seventh, are dealt with or mentioned.    Two
of the sons, Frederick and William, insist that the deed of

trust if sustained will dispose of the property sought to be transferred by it upon limitations different from those authorized by the will of their father, and that it is, therefore, an unauthorized and illegal instrument; and they further contend that the assignment of the mortgages to the Realty Company is likewise unwarranted. They therefore filed a bill in Circuit Court No. 2, of Baltimore City, against Mrs. Bauernschmidt individually and as executrix, against the other four children, the Realty Company and the Baltimore Trust and Guarantee Company, in which bill they prayed that the Court would take jurisdiction over the administration of the estate of George Bauernschmidt and would vacate and set aside the deed of trust and the conveyance of the mortgages, so that the securities mentioned in the deed of trust and in the conveyance may be accounted for as part of the assets of George Bauernschmidt's estate. To this bill answers were filed by all the defendants and quite a volume of testimony was taken.

Without going into a minute recital of the averments of the bill or the statements of the answers it will suffice to say that the questions which are now before us for solution may be reduced to two, viz.: *First.* Is the deed of trust dated July the twenty-sixth valid? *Secondly.* Is the conveyance of September the seventh transferring the mortgages to the Realty Company effective? The first question is divisible into two inquiries, viz.: *First.* Assuming that the securities mentioned in the deed of trust belonged to George Bauernschmidt at the time of his death, does his will empower his executrix to make the disposition of them which has been made by the deed? *Secondly.* Did those securities belong to the estate of George Bauernschmidt, and did any of them which had been his, become the property of Mrs. Bauernschmidt either by reason of her being named as joint tenant with her husband in the certificate for one hundred and forty shares of the Bauernschmidt Brewery Company's stock; or by virtue of a gift of them to her by her husband as evidenced by his declarations and by the method adopted in placing them in the safe deposit box of the Mercantile Trust Company, as hereinbefore stated?

The Circuit Court declared by paragraph ($d$) of its decree that the deed of trust was void and that all the property and securities covered thereby and the proceeds thereof be accounted for before the auditor as a part of the estate of the late George Bauernschmidt. By paragraph ($e$) it was adjudged that the conveyance of September the seventh assigning the mortgages to the Realty Company was also null, and the decree directed the proceeds to be accounted for as part of the estate of George Bauernschmidt. And by paragraph ($f$) it was determined that the alleged gifts of the securities which were in the safe deposit boxes were ineffectual, because there was no sufficient delivery of the securities to pass title thereto ; and they were required to be treated as belonging to George Bauernschmidt's estate. From that decree two appeals have been taken—one by Margaretha Bauernschmidt, executrix, and others, and one by the Baltimore Trust and Guarantee Company, trustee.

We will now proceed to dispose of the questions presented, as concisely as the nature of the inquiries will permit.

*First :* Is the deed of trust valid ? Assuming that the securities or any of them were the property of George Bauernschmidt at the time of his death, do the provisions of his will authorize his executrix to deal with them as she has done by the deed of trust ? We will first see what the provisions of the will are ; then ascertain what they mean ; then, contrast therewith the dispositions made by the deed of trust ; and finally we will determine whether those dispositions are in accordance or in conflict with the scheme, the intention and the terms of the will.

Without pausing to note the preliminary clauses of the will or the particular devises of certain real estate made to his wife " for the full term of her natural life," we quote the following items inasmuch as they are the controlling and important ones.

Item. I give, devise and bequeath unto my wife, Margaretha Bauernschmidt, all the rest, residue and remainder of my estate, of which I shall die possessed or be entitled to, of every kind and wherever situated, for the full term of her nat-

ural life, with full power to her hereby granted, to sell, mortgage, lease, transfer and due conveyance make of said property or of any part thereof, in her sole name and to invest and re-invest the said property and the rents, profits and revenues thereof, and otherwise in any manner to change, dispose of, use and deal, with the said property and the rents, profits and revenues thereof, for her sole benefit and at her sole discretion as fully as I could do.    *    *    *

Item. At and upon the death of my said wife, and after the payment of her just debts and funeral expenses out of any part of the estate which shall come into the hands of the trustees hereinafter named, then and on the happening of that event, I give, devise and bequeath all the rest, residue and remainder of my said estate, then being unto John Bauernschmidt and Sarah Bauernschmidt, and the survivors of them in trust and confidence nevertheless, for the following trust uses and purposes to wit:

First. In trust and confidence immediately upon the death of my said wife, to take the said property into possession and after the payment of all necessary and proper expenses connected with said property and the administration of the trust hereby created, to divide the whole of said property remaining into six equal parts and to immediately pay over, convey and distribute five of said equal parts in the manner following, that is to say:

One equal sixth part each, to my children namely, John, Frederick, William and Sarah Bauernschmidt and Emilie Wehr, *nee* Bauernschmidt, and in the event of either of my said children being then dead and issue surviving, then and in such event, his, her or their child or children shall take the parent's share, equally, share and share alike, and in the event of either of my said children being then dead and no issue of his, her or their body or bodies surviving, then, and in such event, in trust, to pay over and distribute his, her or their respective one-sixth share or shares, in equal parts, equally, share and share alike, to and among the surviving children of my body, the child or children of any deceased child or children of my body to take the parents share, *per stirpes.*

"Whereupon the trust hereby created in said property shall cease and be determined." As to the remaining sixth part a trust is provided for the benefit of the daughter Elizabeth for life with remainder to her children should she have any, and in default of issue living at her death that share is given over to the testator's " legal heirs and representatives."

It is obvious at a glance that the interest given to the widow in the *residuum* was limited to "the full term of her natural life," unless the superadded powers converted what was expressly declared to be a life estate into an absolute estate, or what, in effect, is equivalent, gave her the right to divest the remainder into a totally different channel so as to defeat the subsequent limitations to the children after the termination of the life estate. The view that the power converted the life estate into a fee is repudiated by the appellants who concede that the will does not vest in the widow a fee-simple estate at all ; but they contend that it gives to her full power over the entire estate to dispose of it in any manner she may deem proper and that it limits and vests a remainder only in such property as may be left undisposed of by her at the time of her death. Whether this view is sound depends altogether upon whether it was the intention of the testator that his widow should be clothed with power to defeat the provisions made in subsequent clauses of the will, in behalf of his children. That intention must be gathered from the face of the will and from the circumstances that surrounded the testator at the time he executed it. This is not the case of a gift generally with a power of disposition of the remainder annexed as in *Benesch* v. *Clark & Bramble, Admr.*, 49 Md. 497. But it is a distinct gift of a life estate with equally distinct gifts over in remainder to other persons, and the question is: Does the superadded power authorize the life tenant to cut down or extinguish or change altogether the remainders created by the will ; or is the power restricted to the management and conservation of the estate so that it may be kept in its integrity for the remaindermen without holding the life tenant accountable for waste ? It is manifest that a predominant object of

the testator was to make ample provision for his widow during her life. He had but recently before the date of his will given to each of his six children one hundred and fifty thousand dollars, and he was apparently solicitous that his widow should enjoy during the remainder of her days the entire income of the estate which he possessed. But this was not all. He was none the less concerned with respect to the claims of his children and therefore he made an equal division of the *residuum* between them after the termination of the life estate. The bulk of his wealth seems to have been invested in stocks and bonds whose values constantly fluctuate in the market, and it was eminently wise to make some adequate and liberal provision by which the life tenant would be clothed with ample power to change those and other investments and property as fully as the testator himself might have done, whenever and as often as the occasion should require it. Nor does the phrase that the life tenant might "dispose of, use and deal with the said property and the rents, profits and revenues thereof, for her sole benefit and at her sole discretion as fully as" the testator could have done, indicate an intention to confer upon her a power to disregard and cancel the later clauses of the will. If the scope of the power is as broad as the contention of the appellants would make it, then the life tenant could strike down the whole scheme and structure of the will and by gift or deed of trust transfer the entire property to total strangers. She could cut off every child, or such of them as she saw fit or as caprice or prejudice might prompt, notwithstanding the careful provision in the will for an equal division amongst all of them. It cannot be supposed and certainly it cannot be read on the face of the will, that the testator meant to give the life tenant such an unrestricted and complete dominion over his property ; and yet to that length the contention must go if it be valid to the extent to which it has been carried by the deed of trust. By the will after the death of the widow five of the children will take their interests in the remainder absolutely; the share of the sixth being placed in trust. By the deed the same five will take

merely an equitable life estate with remainders over in trust to their respective children until the youngest of those children attains the age of twenty-one years, at which time, but not before, the trust is to terminate and the property is to be distributed. Thus the vesting of the remainders is postponed for more than a generation and are then made to vest in totally different individuals from those named in the will. If such a change may be made in the dispositions contained in the will, then why may not a more radical one of the kind above suggested be also carried into effect? Not only is the interpretation insisted on by the appellants at variance with the whole scheme of the will, but it is in conflict with adjudged cases as will be seen in a moment. In order to maintain in its integrity the entire will, to keep its chief and most important provisions in harmony and to give effect to the testator's obvious intention to preserve an exact equality amongst his children in the distribution of his large estate, the superadded power must be construed to be co-extensive with the life estate and to be no wider; and, therefore, it must be held that it conferred upon the life tenant authority to dispose of the life estate given to her, and this, and this only, she was authorized to do as fully as the testator could have done.

In the recent case of *Russell* v. *Werntz*, 88 Md. 210, the clause in a will then under examination was in these words : "I bequeath unto my present wife, Virginia Russell, all the residue of my estate, including all my property, both real, personal or mixed, to have and to hold and dispose *off* (sic) as she may see fit, while she remains single, and at her death or marriage, the remaining property is to be equally divided between my two daughters, Grace A. Russell and Jessie V. Russell." It was contended that the power of disposition being without limitation the widow took a fee, or else, if she took but a life estate, the full exercise of the power would be effectual to convey a fee-simple title in the remainder. But this contention did not prevail. In the course of the judgment it was said : "It also seems clear to us that he the [testator] desired his children to take the estate after the interest of

the widow had terminated by marriage or death. * *. * . Can it be entertained for an instant that he intended to modify the whole plan, by conferring upon his widow a power of disposition of the reversion whereby she could defeat the rights of her daughters, appropriate the estate to her own use, bequeath or devise it at will, and defy the wish of her husband that she should retain the estate only so long as she remained unmarried? The possession of such a power would be inconsistent with and would defeat every intent expressed in or to be gathered from the will. *. * *. * All the clauses and every word in a will should receive such a construction as that, while effect is given to each, they are all made to harmonize with each other, so as to reach the general plan or scope of the entire will. If, however, the clause in question be construed so as to confer on the widow only the right to dispose of the estate to the extent of the interest she takes in the estate, it will harmonize with all the provisions of the will and all the intents to be gathered therefrom." Stress was laid by the appellant in that case upon the use of the words "the remaining property," as stress is laid here upon the use of the words "property remaining," as indicating the testator's intention that the life tenant should have the right to diminish the *corpus* of the estate and as denoting his purpose, when creating the remainders, to dispose of only that which might be left after such diminution. But it was said in the case just cited : "The property that passed under the second item [the item we have quoted from Russell's will] comprehended both realty and personalty. All of it was liable to waste or decay ; some portions of it doubtless would deteriorate by its use, and other articles were of such nature that their use was their consumption. In view of the general and particular intents of the will, it is not straining the construction of these words to regard them as indicating the intention of the testator. that his widow should not be accountable for such loss or waste as might result from her personal enjoyment of the property." The principle applied in deciding the case of *Russell* v. *Werntz* is thus clearly stated, p. 215 : "The principle we now apply

is, that where a testator has given in express terms an estate for life with a power of disposition annexed, with remainder over, the words conferring the power, though absolute, may be qualified by restraining words connected with and explaining them, so as to confer only such absolute disposal as a tenant for life may make. In such case a power to dispose of the reversion and thereby deprive the remainderman of his interest, would be wholly inconsistent with the intent to grant an estate not to endure beyond life, and it should be so held, unless there is a clear purpose manifested in the will, that the power shall extend to the disposal of the reversion." See also *Smith* v. *Bell*, 6 Pet. 78; approved in *Dorsey* v. *Dorsey*, 9 Md. 38 ; *Brant* v. *Va. Co.*, 93 U. S. 333.

We have said that much stress was laid upon the words "then being" and upon the words "property remaining" as indicating that the power of disposal was broad enough to include the right to convey away to strangers the *corpus* of the estate and as denoting an intention to include in the *residuum* only such portion of the property as had not been disposed of by the life tenant. But a correct reading of the will does not justify the contention. By a clause which has been quoted and which precedes the one that creates the remainders, the testator directed his wife's debts and funeral expenses to be paid out of his estate and then he gave the rest and residue "then being" to two trustees. By the next clause the trustees were required to take the property into possession and after paying the expenses connected therewith and with the administration of the trust they were instructed "to divide the whole of said property remaining" into six equal parts. By the phrase "then being" the testator obviously meant that which the trustees would hold after the payment of the wife's debts and funeral expenses; and by the phrase the "said property remaining" he clearly intended that which remained after the expenses of the property and of administering the trust had been deducted; and he did not mean to imply that the life tenant could at her mere whim or pleasure cut down the remainders or divert the *corpus* of his estate, because such a

power "would be wholly inconsistent with the intent to grant an estate not to endure beyond life." *Russell* v. *Werntz, supra.*

For the reasons we have assigned we are of opinion that Mrs. Bauernschmidt derived no authority under the power contained in the will of her husband to convey by the deed of trust the securities which belonged to his estate, further than such conveyance would operate upon and transfer her life estate in them.

Now, as to the second subdivision of the first question, viz.: Did the securities conveyed by the deed of trust belong to the estate of George Bauernschmidt, and did any of them which had been his become the property of Mrs. Bauernschmidt by reason of her being named as joint tenant with her husband in the certificate for one hundred and forty shares of the Banernschmidt Brewery Company's stock; or by virtue of a gift of them to her by her husband as evidenced by the method adopted in placing them in the safe deposit boxes?

It is proper to say at the threshold of this branch of the subject that according to the evidence in the record one hundred and seventeen thousand dollars of the securities covered by the deed of trust and consisting of one hundred and twelve Mobile City bonds, two Georgia and Carolina bonds and three Atchinson and Santa Fe bonds, belong to Mrs. Bauernschmidt as they were bought by her and it has not been shown that she purchased them with assets of the estate. It is also clear and undisputed that fifty thousand dollars worth of securities covered by the deed of trust and consisting of fifty City and Suburban Railway bonds, are the property of Miss Elizabeth Bauernschmidt and not part of the assets of the estate. With respect to these securities aggregating one hundred and sixty-seven thousand dollars the decree adjudging them to be part of the testator's estate and requiring them to be accounted for as such is obviously wrong and must be reversed. Of the remaining four hundred and eighty-three thousand dollars of securities, sixty thousand, consisting of twenty thousand dollars of Baltimore City stock and forty thousand dollars of Baltimore City Passenger Railway bonds, were transferred to

Mrs. Bauernschmidt by the Realty Company on August the twenty-eighth, 1899, as heretofore stated, and they will be dealt with later on. Deducting the sixty thousand just named there remain four hundred and twenty-three thousand dollars of securities. Of those, ninety thousand were registered in the name of George Bauernschmidt. Eighty-five thousand and five hundred, part of the ninety thousand, were accounted for in the inventory filed by the executrix, and they still belong to the estate though included in the deed of trust. They belong to the estate because the only authority which Mrs. Bauernschmidt had to dispose of them in the way she did, was under the power contained in the will, and that power was ineffectual to accomplish what she undertook except as respects her life interest in them. Deducting the ninety thousand just named and there are left three hundred and thirty-three thousand dollars, and subtracting from them the seven thousand dollars of Baltimore City stock which was held by the Bauernschmidt Brewery Company and was transferred to Mrs. Bauernschmidt on May the eleventh, 1899, and will be spoken of later on, and there remain three hundred and twenty-six thousand dollars in securities which were taken from box No. 4392 of the Mercantile Trust Company. The investments making up this last named sum are those claimed by Mrs. Bauernschmidt in the double aspect mentioned, viz.: as surviving joint tenant of the Bauernschmidt Brewery Company's stock and as the donee under a gift from her husband.

It is true that one hundred and forty shares of the capital stock of Bauernschmidt Brewery Company stood in the name of the husband and wife as joint tenants—that is, tenants by entireties—and if there had been no change made perhaps a different situation would have been presented. But it must be borne in mind that on December the thirtieth, 1898, when the resolution was adopted to sell to the Maryland Brewery Company, the stockholders of the Bauernschmidt Brewery Company accepted the requirement of the purchaser that the stock of the vendor company should be turned over to the new concern or to its projectors; and that in accordance therewith

George Bauernschmidt assigned in blank the certificate for one hundred and forty shares of stock, whereby the muniment of whatever title Mrs. Bauernschmidt had wholly ceased to exist. When it is remembered that the whole of the property originally belonged to George Bauernschmidt; that the corporation which he formed and which took over that property was obviously created for mere convenience in the transaction of the business ; that neither his wife nor children invested a dollar in the stock; that he voluntarily placed the name of his wife in the certificate as a joint tenant after having cancelled one that had been previously issued to her in her own name for thirty shares ; that he was treated by all the others as the real owner of the one hundred and forty shares as the minutes of the meeting of December the thirtieth, 1898, show ; and that he then surrendered to Sperry, Jones & Company the certificate for one hundred and forty shares and himself received and exercised exclusive control over the entire cash proceeds of the sale ; it can scarcely be contended that Mrs. Bauernschmidt still continued to be a shareholder in the Bauernschmidt Brewery Company or retained, if she ever had, any interest in the purchase-money paid for the property which had actually belonged to her husband alone.

There can be no perfected gift where there has been no complete surrender of dominion over the thing given.   Now, George Bauernschmidt never did surrender control over the stock of the Bauernschmidt Brewery Company even after the stock had been issued.   He first put none in the name of his wife.   Afterwards he gave her thirty shares and then he cancelled that certificate and others and issued the one for one hundred and forty shares.   He was not only President of the company, but in fact the owner of all its property.   He issued and cancelled certificates seemingly as he pleased.   When one of his sons died in whose name ten shares stood in two certificates, there was no administration on his estate, but the real and dominant owner simply cancelled the certificates and made a new distribution of the stock incorporating his deceased son's ten shares in the one hundred and forty shares

certificate. He, and he alone, voted the one hundred and forty shares and his final assertion of control over the certificate representing those shares was manifested when he transferred it in blank and delivered it to Sperry, Jones & Company. His dealing with the stock and her acquiescence in what he did and the fact that he could, and did, as the actual owner of all the property which the company possessed, exercise complete control over those one hundred and forty shares, show that he had never surrendered dominion over them or put it out of his power to revoke the gift of them. In making the transfer of the certificate George Bauernschmidt must be treated as having acted rightfully because the legal presumption is against his having acted wrongfully. *Corner v. Pendleton*, 8 Md. 337.

It comes, then, to the question whether there was a valid and perfected gift by the husband to the wife in any other way. The only other way that has been suggested or relied on is the re-renting of safe deposit box No. 4392 of the Mercantile Trust Company, under the contract set forth in an earlier part of this opinion. It is insisted that in virtue of what was then done George Bauernschmidt created a tenancy by the entireties in himself and his wife in respect of the securities contained in that box. Of course such a tenancy may exist and one of its incidents is that the survivor becomes entitled upon the death of the other to the property thus jointly held by husband and wife. It may have its origin in a voluntary gift by the husband, but like any other gift, to be valid and effective, it must possess certain well defined and essential qualities. There can be no gift which the law will recognize where there is reserved to the donor, either expressly or as a result of the circumstances and conditions attending the transaction, a power of revocation or a dominion over the subject of the gift. There must be no *locus penitentiæ*, and there is always a *locus penitentiæ* when the supposed donor may at any moment undo what he has done. *Brewer v. Bowersox*, 92 Md. 570; *Whalen v. Milholland*, 89 Md. 199. If the donor retains dominion over the thing

given, precisely as he had control of it before the alleged gift was made, there is obviously no perfected gift because there has been no change of possession and there is still an opportunity to recant.    The application of this principle to the facts in the record is not difficult.    The securities which were in box No. 4392 on March the thirteenth, 1899, when that box was re-rented in the names of George and Margaretha Bauernschmidt as "joint tenants" undoubtedly belonged to George Bauernschmidt individually.    That there may be no mistake about this statement allusion will be made quite briefly to some of the evidence by which it is established.    On January the twentieth, 1897, the stockholders of the Bauernschmidt Brewery Company, including Mrs. Bauernschmidt, signed a resolution whereby they forever acquitted, discharged and released George Bauernschmidt his heirs, personal representatives and assigns and also the Brewery Company, its successors and assigns "from all claims and demands whatsoever on account of any dividends heretofore earned or that may have been earned" on its capital stock.    Five days previously a resolution had been unanimously adopted by the stockholders of the same company declaring that "all money heretofore drawn by the president (George Bauernschmidt) for investment, &c., shall be cancelled and wrote off the company's books for which (sic) value received, &c."    In pursuance of the first of the above resolutions, as is shown by the testimony of Frederick Bauernschmidt who was at that time the secretary of the company, all the securities which had been held by the George Bauernschmidt Brewing Company and which represented surplus profits were transferred to George Bauernschmidt as his individual property.    It is not pretended that these investments were made with money which came from any other source than surplus profits of the company's business—and that business was in point of fact the business of George Bauernschmidt.

Did George Bauernschmidt on March the thirteenth, 1899, part with dominion or control over his securities ?    If he did not do so on that day he certainly never did afterwards.    By the

terms of the renting, box 4392 could have been entered by husband and wife *severally* and upon the death of either the survivor was entitled to have access to it.   This arrangement wrought no change in the dominion which George Bauernschmidt previously had over the property.   He could have taken every bond and certificate of stock out of the box without the assent or even against the protest of his wife, and could have disposed of them just as he pleased.   The fact that the wife had a key to the box did not place any restriction on the husband's control over the property contained in the box, and it cannot be asserted as a legal postulate that a mere right of *access* to the box on the part of the wife during the husband's life changed the title to the contents of the box.   Conceding that he designed to make a gift to his wife of the securities then in the box, still if he was free after March the thirteenth, 1899, to do what he pleased with those securities, notwithstanding the terms of the renting, then there was a *locus penitentiæ* reserved and consequently there was no perfected gift even though in point of fact he did not attempt to exercise the dominion which he retained.   It is the *existence* and not the *exercise* of the *locus penitentiæ* which defeats a gift *inter vivos.* "There is no case which decides that the donor may resume the possession and the donation continue." *Bunn v. Markham*, 7 Taunt. 214.   If he had phrased the contract of renting so that *neither he nor his wife* could during the lives of both enter the box without the presence or consent of the other, his control over the things in the box would have been much more restricted.   The title must pass out of the donor in his life time or it can never reach the donee.   *Walsh's Appeal*, 122 Pa. St. 177; s. c., 1 L. R. A. 535.

There is a clear distinction between the case at bar and *Brewer v. Bowersox, supra,* and *Estate of Parry*, 188 Pa. St. 33; s. c., 49 L. R. A. 444, which last-named case was relied on by this Court in *Brewer v. Bowersox.* In *Brewer v. Bowersox* the certificate of deposit that created the tenancy by the entireties was made payable to the husband *and* wife jointly. Neither of them during the lives of both could have drawn

the fund from the bank which issued the certificate, without the endorsement of the other, and consequently the original owner of the fund parted with or was deprived of the dominion over it which he formerly had.     It required something more than *his* act and *his* volition to repossess himself of the money. The wife's co-operation by endorsement of the certificate or at least by a distinct acquiescence in its surrender· was necessary to restore the fund to his control.     Besides the certificate was issued by a corporation which was not under the dominion of either the husband or the wife.     In *Parry's case, supra*, the evidence of the surviving wife's ownership consisted of two letters of credit issued, the one by a firm of bankers and the other by a national bank, and both letters were payable to the husband and wife jointly.     The letters could not have been cashed without the signatures of both husband and wife to the drafts.     In the case at bar, however, as has been stated, the husband was just as free to do what he pleased with the securities after the re-renting of the box. on March the thirteenth as he had been before, and consequently he did not put it out of his power to dispossess his wife of any interest in them which she claims he intended to give her.

It was proved that George Bauernschmidt repeatedly said when speaking of himself and his wife that "whoever lived the longest should have everything that was left, securities and everything   *   *   *   *.     He said as he had to pay Fred. $150,000 he would pay the balance the same and whatever was left belonged to him and" his wife; "and whoever lived the longest should have everything."     But those and similar declarations cannot constitute a gift.     "A gift is more than a purpose to give, however clear and well settled the purpose may be.     It is a purpose executed.     It may be defined as the voluntary transfer of a chattel completed by the delivery of possession.     It is the fact of delivery that converts the unexecuted and revocable purpose into an executed and therefore irrevocable contract."   *Walsh's Appeal, supra.*     There was no such delivery in the case before us now.

The forty thousand dollars of Baltimore City Railway bonds

and the twenty thousand dollars of City of Richmond stock and the seven thousand dollars of Baltimore City three and a-half per cent stock were in box No. 4392. Part of these stood in the name of the Bauernschmidt Brewery Company and the forty thousand dollars of bonds all indicated on a list of securities made up by John Bauernschmidt, one of the defendants, as the private property of George Bauernschmidt. Neither the Realty Company nor the Bauernschmidt Brewery Company could by transfer or otherwise divert from the estate of George Bauernschmidt those securities or vest them, or title to them, in Mrs. Bauernschmidt ; because as respects the Realty Company it did not own the securities it undertook to transfer ; and as respects the Brewery Company the property which had not been conveyed or assigned by it to the Realty Company during the life of George Bauernschmidt belonged to George Bauernschmidt as the real, substantial owner of everything which stood in the name of the Brewery Company. The situation that existed after the death of George Bauernschmidt was peculiar. All of the shares of the capital stock of the Bauernschmidt Brewery Company had been transferred to the syndicate, or to the new corporation which the syndicate formed, and not one of the original shareholders retained a single share of the stock. They were then no longer stockholders of the Bauernschmidt Brewery Company. How could they have been after every share of the authorized capital was held by other individuals ? Notwithstanding the fact that the original stockholders of the Bauernschmidt Brewery Company were no longer stockholders and could, therefore, exercise no corporate act at all, they met and turned over to the Realty Company some of the securities standing in the name of the Brewery Company and they directed others of the same kind to be delivered to Mrs. Bauernschmidt. This is the origin of her title to the sixty-seven thousand dollars of securities we are now concerned with ; and it requires no discussion to demonstrate the conclusion that a title thus acquired is no title at all. Conceding that the stockholders of the Bauernschmidt Brewery Company could give away assets standing in the

company's name but actually owned by George Bauern-
schmidt's estate, it is obvious that when the persons who had
been stockholders, ceased to be stockholders they were pow-
erless to act as stockholders, and that what they did in the
capacity of stockholders when they were, in fact, not stock-
holders was simply void.

*Secondly:* Is the assignment of the seventh of September,
1899, conveying the mortgages to the Realty Company valid?
Those mortgages stood in the name of George Bauernschmidt.
Mrs. Bauernschmidt asserted the right to transfer them under
the power in the will of her husband.    It does not appear that
she did this by way of changing an investment, but she did it
for the purpose of putting the title in the Realty Company of
which she claimed by right of survivorship to be the largest
shareholder.    As we have already pointed out the will con-
ferred upon her no power to give away the assets of the
estate.    Without further discussion we hold the assignment
invalid.

After the six hundred and fifty thousand dollars of securi-
ties covered by the deed of trust had been taken out of the
safe deposit box of the Mercantile Trust Company there re-
mained there three hundred and eighteen thousand dollars of
bonds.    Mrs. Bauernschmidt then rented six boxes—one for
each of her children—and divided these three hundred and
eighteen thousand dollars of bonds into six lots of fifty-three
thousand dollars each, and placed one lot in each box.    Over
and above the fifty-three thousand dollars of bonds placed in
each box Mrs. Bauernschmidt added forty-two thousand dol-
lars in bonds, making the contents of each box aggregate
ninety-five thousand dollars in bonds.    The two hundred and
fifty-two thousand dollars of bonds so distributed in amounts
of forty-two thousand dollars were purchased by Mrs. Bauern-
schmidt with funds derived from two sources, viz., two hun-
dred and forty-two thousand dollars realized by her from the
sale of the stock of the Maryland Brewery Company that had
been issued in part payment for the purchase of the George
Bauernschmidt Brewery Company, and with a portion of the

cash purchase-money which had been received by George Bauernschmidt in his life time from the Maryland Brewery Company when the latter company bought the property, the capital stock and the business of the former. It is clear that all of these securities which Mrs. Bauernschmidt thus attempted to deal with as her own formed part of the assets of her husband's estate ; because she has no other title to them than the one we have held to be insufficient to vest in her an ownership of the other securities contained in box No. 4392.

Inasmuch as part of the property transferred by the deed of trust was the individual property of the grantor, according to the evidence in the record, the deed is clearly valid as respects the bonds which were hers ; and if the fifty thousand dollars of bonds which belonged to the daughter were included in the deed with the daughter's consent the deed is also effective to transfer those bonds to the trustee. A deed may be good in part. When it purports to convey that which the grantor had no authority to convey as well as to transfer that which he could transfer, it will be good as to the latter though inoperative as to the former. *Butler* v. *Rahm*, 46 Md. 547. Though the deed purports to be absolute, and though it cannot be effective as an absolute transfer of the property which belongs to the estate of George Bauernschmidt ; yet it can operate to the extent of Mrs. Bauernschmidt's interest in that property. She had the right to convey away her life estate and to that extent in addition to the transfer of her own and the daughter's individual property it may be upheld. " Such interest as the grantor has will pass, although the deed purports to convey an absolute title." 9 *Am. & Eng. Ency. L.*, (2nd ed.) 127–128 and note 1 ; *Thompson* v. *Simpson*, 128 N. Y. 270. Whilst in order to perfect the title of the life tenant to the securities and money not included in her account as executrix it is necessary that they should pass through a due course of administration ; still she had an inchoate title which it was competent for her to assign. *Cecil Admr.* v. *Rose*, 17 Md. 102; *Cecil* v. *Clark*, Ib. 520; *Rockwell* v. *Young*, 60 Md. 566.

The ultimate conclusions which we have reached are as follows : *First :* That paragraph (*a*) of the decree by which the exceptions filed by the defendants to some of the testimony are sustained, is affirmed.     *Second :* That paragraph (*b*) by which the exceptions filed by the plaintiffs to certain questions and answers in the testimony of Mrs. Bauernschmidt were upheld, is affirmed.     *Third :* That paragraph (*c*) overruling all other exceptions to the testimony, is affirmed.     *Fourth :* That paragraph (*d*) striking down the deed of trust as an entirety and declaring that *all* the securities covered thereby belong to the estate of George Bauernschmidt, is reversed.     *Fifth :* That paragraph (*e*) vacating the transfer of the mortgages to the Realty Company, is affirmed.     *Sixth :* That paragraph (*f*) determining that the alleged gift of the securities by the husband to the wife was ineffectual, is affirmed.     And *Seventh :* That paragraph (*g*) in so far as it directs an account to be stated in accordance with paragraph (*d*) is reversed. The case will be remanded that a new decree may be signed in accordance with this judgment and that an account may be stated pursuant to the views herein expressed.

> *Decree affirmed in part and reversed*
> *in part, the costs above and below to*
> *be paid out of the estate, and cause*
> *remanded.*

(Decided April 1st, 1903.)