Booth, Judge,
delivered the opinion of the court:
This is an estate tax case. The plaintiffs seek to recover $11,223.62 levied and collected by the Commissioner of Internal Revenue from the plaintiffs, executors of the estate of William A. Jones, deceased. The facts, about which there is no important dispute, involve the primary question of a gift inter vivos. The decedent, William A. Jones, was president and owner of 800 of the 1,000 outstanding shares of the capital stock of the William A. Jones Foundry and Machine Company, an Illinois corporation. Mr. Jones resided at La Porte, Indiana, and died there on May 30, 1921. The claim is now made that on Thanksgiving Day, 1920, Mr. Jones gave to his son, Warren Jones, 288 shares of stock in the above corporation of the value of $116,412.00. The executors of the estate did not include in their returns for the estate tax the value of said shares. The commissioner, after, audit and review, did include the amount as part of decedent’s estate, and assessed an additional tax thereon of the amount claimed in this case. No jurisdictional questions are involved.
The findings disclose that the decedent continued the active and dominating figure in the corporation up to about 1915. He was anxious to have his son, Warren Jones, succeed him and was doing all he could to arouse the son’s interest in the business, as well as test his capacity to take it *454 over. He assured the son that if he successfully managed affairs it was his intention to give him a substantial interest in the business prior to his death and a controlling interest therein after that event. The son did succeed. The father made his last will in 1916 and bequeathed to the son 599 shares of stock in the corporation. This legacy, with the addition of one share then owned by the son, gave him 600 shares, more than a majority of the stock.
On Thanksgiving Day, 1920, some four years after the date of decedent’s will, the decedent called upon his attorney and requested him to accompany decedent to a bank where he kept his safety deposit box wherein all his stock holdings in the corporation were contained, stating at the time that he was on the point of leaving for Florida and “wished to attend to transferring the stock to Warren.” The decedent’s lawyer segregated from his stock 288 shares thereof, and by the direction of the decedent indorsed the same over to his son Warren. The decedent signed each indorsement. Thereafter the 288 shares were placed in a separate envelope upon which, on a separate piece of paper attached to the envelope by rubbers, the lawyer wrote the following: “ 288 shares of stock belonging to Warren Jones.” This indorsement the decedent also signed. The package was then replaced in the decedent’s safety box and remained therein until his death. The lawyer retained a key to the box and it was available for use to Warren Jones. The lawyer knew no more of the transaction until the time came for the settlement of decedent’s estate. Warren Jones did not take physical possession of the stock and no claim is made that he was present when the alleged gift was made. He did know of his father’s intention to make such a gift and claimed only a total of 599 shares of stock, 311 from the estate and 288 from this alleged gift.
The plaintiffs insist that the gift was complete; that delivery was made either actually or constructively. There is a manifest intent to make at some time a gift of the stock to the. son, but more than intent is essential to complete the .transaction. The difficulty is one of delivery. At once from the record we are faced with the proposition of title, i. e., transfer of title. The stock certificates, though segre *455 gated from others, never changed location. There was no time subsequent to the alleged transfer when the son may be said to have had dominion over them. As a matter of fact, the son seems to have been wholly ignorant of what did take place. It is evident that the father under the existing conditions retained the stock in his possession and might have sold .it. If a question of ownership of the stock had developed between the father and son during the continuance of the status quo, the father undoubtedly would have been declared the owner; so that as between the parties we have little doubt that the gift was incomplete. The testimony of the attorney precludes the possibility of sustaining a contention that he accepted delivery of the stock as trustee for the donee. He was acting for the donor, and gave himself no concern whatever over the transaction after its completion at the bank.
The cases cited by the plaintiffs do not depart from the axiomatic rule as to the essentials of a gift inter vivos. They each one disclose clearly a delivery either to the donee, or someone acting for him. As stated in the brief: “Where the donor intended to give the bonds to the donee and placed within the power of the donee to obtain them and where the donee does in fact obtain them there is sufficient delivery.” (Citing Muir v. Gregory, 168 Fed. 641.)
Unfortunately for the plaintiffs the donee in this case did not receive by delivery the key to the donor’s safety deposit box, as illustrated in the case of Hagemann v. Hagemann, 204 Ill. 378.
We do not think it necessary to continue the discussion. It is an easy and far from cumbersome matter to make a valid gift of certificates of stock — one free from doubt and leaving no avenue open for adverse contentions. The donor in this case was a man of large business experience, he knew how to transfer corporate stock, and he and his son were upon amicable relations, and no reason appears of record why a departure from such a course was adopted. If the donor did not intend to retain dominion over the stock, and keep within his power the reserved right to exercise ownership over it if occasion demanded, he should have given it to the son outright and not resort to unusual and obscure *456 means which serve only to becloud the transaction and throw it open to injection of questions of doubt and conjecture.
The tax was assessed under section 402 of the revenue act of 1918, 40 Stat. 1057, 10.97. This section and pertinent subdivisions read as follows:
“ That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—
“ (a) To the extent of the interest therein of the decedent at the time of his death which after his death is subject to the payment of the charges against his estate and the expenses of its administration and is subject to distribution as part of his estate;
‡ ‡ $
“(g) To the extent of any interest therein of which the decedent has at any time made a transfer, * * * in contemplation of or intended to take effect in possession or enjoyment at or after his death * * * except in case of a bona fide sale for a fair consideration in money or money’s worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the'decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title; * * * ”
The defendant raises the additional question of a transfer in contemplation of or intended to take effect in possession and enjoyment after death. The donor was at the time of the gift in somewhat the same situation as to his health which had prevailed for many years. He did not contemplate immediate demise; and in view of the terms of his will it would seem that the transaction was an arrangement of stock certificates in such a way that he might, if so inclined, complete it before his death, and thus accelerate a portion of the legacy left to the son in his will. In any event the donee would receive the gift, either through the will or prior to the donor’s death.
The petition will be dismissed. It is so ordered.
Moss, Judge; Graham, Judge; and Campbell, Chief Justice, concur.
GreeN, Judge, took no part in the decision of this case.