J. M. KESSLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52640.   Promulgated December 6, 1934.

*Richard S. Doyle, Esq.,* and *Howard B. Hopps, Esq.,* for the petitioner.

*R. P. Hertzog, Esq.,* for the respondent.

OPINION.

TRAMMELL: This is a proceeding for the redetermination of a deficiency in income tax for the year 1920 in the amount of $24,767.65. The issue is whether or not petitioner, during the taxable year, made a valid gift to his wife and an employee of his one-seventh interest in a certain oil lease.

During the year 1920 the petitioner, with one H. H. Rath, was engaged in the sale of stock of the Noco Petroleum Co., a corporation organized under the laws of Delaware, with offices in Kansas City, Missouri, and engaged in the development and operation of oil properties.

Petitioner, Rath, one C. J. Webster, and four other individuals acquired at a cost of $2,000 an undivided one-half interest in an oil lease known as the McAdoo lease, located in Okmulgee County, Oklahoma, and by an instrument dated February 10, 1920, the owners instructed Webster to take the title in his name as trustee for them.   Subsequently, a well was brought in on property adjoining the McAdoo lease, and petitioner and his associates then acquired the other one-half interest in the lease by assignment dated June 15, 1920, at a cost of $9,500.   Title to the one-half interest last acquired

in the lease was also taken in the name of Webster, who was directed by an instrument dated July 10, 1920, to hold the entire lease in his name as trustee for the respective owners.

Webster, as trustee, executed a certificate to each of the owners as evidence of ownership of the one-seventh interest in the whole McAdoo lease, the certificate so executed and delivered to petitioner reading as follows:

July 10, 1920. This to certify that I have received an assignment to a certain oil and gas lease, known as the McAdoo Lease, situated in Okmulgee County, Oklahoma, of which J. M. Kessler is an equitable owner of a one-seventh interest.

[Signed] C. J. WEBSTER,
Trustee.

Drilling was begun immediately on the McAdoo lease, and on August 4, 1920, a well was brought in, flowing about 1,500 barrels per day. Petitioner decided to give his interest in the lease one half to his wife and one half to his assistant in charge of sales, Roxanna Holloman, and advised Webster, the trustee, to that effect. On August 6, 1920, petitioner signed or endorsed his certificate of interest and delivered it to Webster's secretary with instructions that it be held for the benefit of Mrs. Kessler and Roxanna Holloman. He informed Miss Holloman of the gift to her at a dinner party in New York on August 5, 1920, at which Webster and Miss Essie Holloman, his secretary, were also present. Petitioner advised his wife of the gift to her by letter of August 6, 1920. She acknowledged the gift, and when petitioner was in Oklahoma City on August 13, 1920, it was agreed between them that he should look after her interest for her.

A Delaware corporation, known as the Blue Rock Oil Co., was organized on or about August 5, 1920, for the purpose of taking over and operating the McAdoo lease. By written instrument dated August 11, 1920, and signed by six of the original owners other than Webster, the trustee was directed to deliver all interest in the McAdoo lease to the Blue Rock Oil Co. in exchange for that company's 6 percent notes to be dated August 11, 1920, in the amount of $50,000 for each one-seventh interest. The instrument was signed by the petitioner, with directions that the note for $50,000 representing his original interest should be made payable to " T. W. Kessler and J. M. Kessler, Trustee."

The note payable to petitioner, as trustee, and to his wife was paid partly in Liberty bonds and partly in cash, the last payment being made on December 15, 1920. The bonds were sold and the proceeds, together with cash paid on the note, were deposited by the petitioner in a special account in the bank in the total amount of $50,274.22. On December 16, 1920, petitioner deposited in the bank to the credit

of Roxanna Holloman one half of this sum, or $25,137.11, and on December 20, 1920, transferred the same amount to the credit of his wife.

The petitioner did not report any profit as having been realized by him in connection with the sale of his original interest in the McAdoo lease, contending that he had made a gift of his entire interest to his wife and Roxanna Holloman prior to the sale and transfer to the Blue Rock Oil Co. Respondent determined that petitioner derived a profit of $48,285.71 from the transaction, holding that he made a gift of the proceeds from the sale and not a gift of his interest in the lease prior to the sale.

Petitioner's contentions, we think, must be sustained. Whether he made a valid gift of the *res*, that is, of his property rights in the lease, prior to the sale of the whole lease, or whether he merely made a gift of his share of the proceeds of such sale, in which latter event the profit derived admittedly would be taxable to him, depends upon whether he made a complete and irrevocable transfer of, and surrendered all dominion over, his one-seventh interest in the lease prior to the sale thereof.

There is no serious controversy in this case respecting the sufficiency of the proof to establish all the essential elements of a valid gift by the petitioner of his interest in the McAdoo lease, except as to the delivery of possession or relinquishment of dominion over the subject matter of the gift. On this point, Webster, the trustee, testified as follows:

Q. What did Mr. Kessler say he was going to do?
A. Said he was going to give his interest to Mrs. Kessler.
Q. That he was going to give it all to Mrs. Kessler?
A. Yes.
Q. When did he make that announcement?
A. That was on the night of the 4th, that we talked it over up there, and on the evening of the 5th, is when he told me he had decided to give one-half to Mrs. Kessler and one-half to Miss Holloman.
Q. But you do not know what action he took in respect to the two ladies involved?
A. Yes, he directed that the certificate of interest be changed over to them.
Q. Was that oral or in writing?
A. It was oral then but I went to the office next day and it was done in writing.

&ast;        &ast;        &ast;        &ast;        &ast;        &ast;        &ast;

Q. The only thing that Mr. Kessler did was to sign his name on the back of the certificate?
A. Endorse his name on the back and deliver it to my secretary and we had the records made accordingly so that the change of interest and ownership would be shown on our records.
Q. When did you do that?
A. On the morning of the 6th.
Q. What did you do with the certificate?

A. Put it in the file and delivered it to my secretary who was holding all of the papers.

Q. You held it after that?

A. Yes.

Q. What change did you make in your records?

A. Just a change of ownership.

The evidence clearly establishes (1) that the petitioner announced his intention of making a gift of his interest in the lease to his wife and Miss Holloman, (2) that he endorsed in blank his certificate of beneficial interest and delivered it to the trustee with specific instructions to transfer the ownership of a one-half interest therein to each of the donees, and (3) that such change of ownership was actually made on the records of the trustee on August 6, 1920. The sale of the lease to the newly organized corporation was not completed until August 27, 1920. The record further discloses that the beneficiaries were informed of the gift, and that they impliedly if not expressly accepted the same and requested petitioner to act as trustee for them in the matter of the sale of their interests. There is no suggestion in the record that the donor or either of the donees was incompetent. These facts, in our opinion, constitute a valid gift *inter vivos*.

In *Marshall* v. *Commissioner*, 57 Fed. (2d) 633 (affirming in part and reversing in part 19 B. T. A. 1260) ; certiorari denied, 287 U. S. 621, the petitioner, in order to reduce his income tax, decided to give to his wife certain shares of capital stock of various corporations. Some of the shares petitioner merely endorsed in blank and caused to be placed in a safe-deposit box carried in the name of his wife, but to which his private secretary had access. Other shares were not only endorsed by the petitioner but were thereafter transferred to the name of his wife upon the books of the respective corporations. In its opinion, the court said:

As to the shares of stock not transferred upon the books of the issuing companies, we are of the opinion that the decision of the Board of Tax Appeals was correct. While Mrs. Marshall was advised by her husband that he intended to give all his holdings of capital stock to her, it is quite evident, as to those shares not transferred upon the books of the issuing companies, that there was not a complete relinquishment of dominion and control of the subject-matter of the gift, and, we think, that there was no such conveyance or assignment as operated to divest the donor of legal title or to vest such legal title in the donee, whatever may have been the equitable rights of the parties after the endorsement of the certificates in blank. See *Edson* v. *Lucas*, 40 F. (2d) 398, 404 (C. C. A. 8), and cases there cited; *Sizer et al.* v. *U. S.*, 65 Ct. Cl. 450; *Lee* v *Lee*, 55 App. D. C. 344, 5 F. (2d) 767. Cf. *Basket* v. *Hassell*, 107 U. S. 602, 614, 615, 2 S. Ct. 415. 27 L. Ed. 500.

\*       \*       \*       \*       \*       \*       \*

As to those shares actually transferred upon the books of the respective companies, however, we are of the opinion that the action of the Commissioner and

the decision of the Board of Tax Appeals were erroneous. Transfer upon the books of the corporation in itself constitutes a delivery. *Roberts' Appeal*, 85 Pa. 84. The transferee then becomes the legal owner. Mrs. Marshall had executed no broad power of attorney * * * The stock was not endorsed and redelivered to her husband, and could not thereafter be transferred, or the dominion and ownership of the petitioner thereafter be regained, except through the independent and voluntary act of his wife. There was nothing unlawful, or even mildly unethical, in the motive of petitioner, to avoid some portion of the burden of taxation. There is nothing illegal in a gift of shares of stock by a husband to his wife.

We see no material distinction, so far as the present issue is concerned, between petitioner's certificate of beneficial interest in the oil lease and shares of capital stock in a corporation. The principle applied by the court in the above cited case, we think, therefore, is equally applicable here. The certificate of beneficial interest having been transferred to the donees upon the records of the trustee prior to the sale, it could not thereafter be again transferred, or the dominion and control of the petitioner regained for his personal benefit, except through the independent and voluntary action of the donees. Such transfer constituted delivery of possession and surrender of dominion. The gift was then complete, and the subject matter of that gift was the petitioner's one-seventh interest in the McAdoo lease, and not the proceeds of the subsequent sale.

It is immaterial that the petitioner acted as trustee for the donees and collected for them the proceeds of the sale. In proper circumstances one may make a lawful gift of his property and yet retain possession and control as trustee for the donee. Such was the case in *Marshall* v. *Commissioner*, *supra*.

The respondent's action is reversed.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

ADAMS, dissenting: I am not satisfied that the facts show bona fide gifts, and, therefore, dissent.