## Skiba *v.* Klaybor, Appellant.

Argued March 24, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*F. A. Piekarski,* for appellant.—In Pennsylvania a high and compelling degree of proof only will cancel a written instrument of conveyance. Only evidence clear, precise, and indubitable, emanating from credible witnesses, concerning facts distinctly remembered and precisely stated, and affecting material issues, can satisfy this rule: Burt v. Burt, 221 Pa. 171; Highland v. R. R., 209 Pa. 286; Cullman v. Lindsay, 114 Pa. 166; Boyerstown Nat. Bank v. Hartman, 147 Pa. 558; Lynch's App., 97 Pa. 349; Pusic v. Salak, 261 Pa. 512; Sulkin v. Gilbert, 218 Pa. 255; Wolfe v. Arrott, 109 Pa. 473; Citizens S. & L. Assn. v. Heiser, 150 Pa. 514; Phillips v. Meily, 106 Pa. 536; Hultz v. Ackley, 62 Pa. 142.

Considered most adversely to defendant, the testimony at best shows the mere weakness of intellect, due specifically to sickness, and is of a quality and quantity insufficient in law to justify a decree of cancellation: Hamilton v. Fay, 283 Pa. 175; Moorehead v. Scovel, 210

Pa. 446; Klein's Est., 207 Pa. 191; Stevenson v. Stevenson, 33 Pa. 469.

*T. M. Gealey,* for appellee, cited: Herster v. Herster, 122 Pa. 239.

OPINION BY MR. JUSTICE LINN, April 27, 1932:

The plaintiff filed a bill for the cancellation of a deed made by her father about four months before his death. Among other things, she averred lack of capacity in the grantor. The defendant is her brother, the grantee named in the deed. The money consideration is $1.00. The court decreed cancellation; defendant appeals.

As the parties agree on the rules of law applicable, recently stated in Pusic v. Salak, 261 Pa. 512, 518, 104 Atl. 751, and Hamilton v. Fay, 283 Pa. 175, 178, 128 Atl. 837, we shall not repeat them. Appellant also concedes that findings of fact made by the chancellor and approved by the court in banc, as in this case, have the effect of the verdict of a jury. The only point for review, then, is whether there is evidence to support the findings (McConville v. Ingham, 268 Pa. 507, 519, 112 Atl. 85); we think there is.

On December 26, 1925, the grantor, John Klaybor, was stricken with what his physician called apoplexy and nephritis; he had a cerebral hemorrhage, and was completely prostrated, mentally and physically. A week later, on January 2, 1926, he executed, with his mark, the deed in question; it purported to convey to defendant premises 1716 Wharton Street, Pittsburgh, in which the grantor and his daughter, the plaintiff, lived. He died of paralysis and acute bronchitis May 17, 1926, having on May 14, 1926, made a will in which he devised the same property to his daughter, the plaintiff. The will was duly admitted to probate.

A number of witnesses testified on each side concerning the grantor's condition at the time he made his mark to the deed. The evidence of one side directly contra-

dicted that of the other. If the evidence on behalf of plaintiff is accepted there was lack of capacity. The testimony of the physician, whose evidence in such circumstances might ordinarily be expected to be helpful, furnished no information about his patient's mental condition on January 2d. He detailed the general character of the disease, and gave the dates on which he saw his patient for treatment over a period of several months; but when he was asked about the grantor's mental condition at or about the time the deed was made, he insisted that he had no recollection of it, and that he could not say whether the grantor "knew or could know" what he was doing.

There is testimony on behalf of the plaintiff that from December 27th until a date long after the execution and delivery of the deed, he was in such paralyzed condition as to be unable to talk or to communicate with others; at times he "mumbled his words"; he was incoherent; he could not move and appeared to be unconscious. On behalf of the defendant there is the evidence of another daughter (not living in the same house as plaintiff did) who said that while her father's left arm was paralyzed "he was able to raise himself" slightly; she said "well he was paralyzed, but his mind was perfect;" "he spoke to me; I was there over four hours and he spoke the whole time I was there." This witness was not on friendly terms with the plaintiff. Each side offered other testimony of the same general character as that indicated as typical.

The learned chancellor accepted evidence offered on behalf of plaintiff as the basis for his findings of fact, and gives the impression that he was induced to believe that the truth lay on that side by the evidence of the Rev. Francis J. Kruk. This witness was the assistant parish priest of the church which the grantor had attended, and first saw him on December 27th, the day after he was stricken. He testified that, from that date, he called to see his parishioner about once a week for a

period of several months; the man was "in bed, his mind seemed to be clouded;" he could not speak; about a week later his condition was the same, and remained so for "five or six weeks"; during the first two or three weeks, he was unable to speak, seemed to take no interest in anything, was unable to understand what the witness said to him. Father Kruk stated that he had a distinct object in ascertaining the grantor's condition because he was there for the purpose of administering the last rites of his church, and "was trying," as he said, "to get some sign to my satisfaction,"—as we understand it, some sign of intelligence.

If we understand the argument made on behalf of appellant, it is a complaint that the court based its findings of fact solely on the testimony of the priest; we do not think so. If we assume, as appellant suggests, that, without this evidence, the learned chancellor would have been in doubt about accepting the evidence of one witness, instead of another, or one group of witnesses instead of the other, and was sufficiently enlightened by the evidence of this particular witness to enable him to resolve any doubt that he may have had, it was his duty to make findings accordingly. The evidence of Father Kruk was specific and intelligible, and in marked contrast to that of the physician who said he remembered nothing of importance to this inquiry. If that evidence, then, clearly settled any doubt that he may have had as to which side he should credit, the findings of fact reflect the evidence that supports them, and not that of the priest's evidence alone. The chancellor has found that, on January 2d, the grantor was not "mentally competent," and that the deed in question "was not the act or deed of the said John Klaybor." As the court in banc approved the findings of facts, and as there is evidence to support them within the rule announced in the cases referred to above, there is no ground for interference by this court.

Decree affirmed at the cost of appellant.