THEODORE C. JACKSON AND W. R. GALLAGHER, ADMINISTRATORS OF THE ESTATE OF CHARLES B. MAXWELL, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 57026. Promulgated April 23, 1935.

R. P. Smith, Esq., and Harold Boulton, Esq., for the petitioners.
Dean P. Kimball, Esq., and E. C. Adams, Esq., for the respondent.

OPINION.

McMAHON: We are asked by petitioners to hold that Maxwell made a valid and completed gift of certain stock to his nieces prior to the sale thereof, with the result that the profit realized on the sale was income of the donees and not income of the donor, Maxwell. The amount of profit realized from the sale is not in dispute, only

the question of ownership of the profits. If the stock belonged to Maxwell at the date of sale, respondent's determination is correct, but if Maxwell made a valid and completed gift of the stock prior to the sale thereof, so as to entirely divest himself of ownership, control, and dominion over the stock, then the profits constituted income to Maxwell's nieces, Dollie and Josephine Stine.

In *Adolph Weil*, 31 B. T. A. 899, the Board set forth the essential elements of a bona fide gift *inter vivos*, as follows:

* * * (1) a donor competent to make the gift; (2) a donee capable of taking the gift; (3) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject matter of the gift, *in praesenti;* (4) the irrevocable transfer of the present legal title and of the dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion or control over it; (5) a delivery by the donor to the donee of the subject of the gift or of the most effectual means of commanding the dominion of it; (6) acceptance of the gift by the donee; *Edson* v. *Lucas*, 40 Fed. (2d) 398, and authorities there cited. Cf. *Allen-West Commission Co.* v. *Grumbles* (C. C. A., 8th Cir.), 129 Fed. 287; *Edwin J. Marshall*, 19 B. T. A. 1260; affd. (C. C. A., 6th Cir.), 57 Fed. (2d) 663, certiorari denied, 282 U. S. 61.

We find the same essential elements required for a valid gift *inter vivos* under decisions of the Pennsylvania courts. *Packer* v. *Clemson*, 112 Atl. 107; *In re Kaufman's Estate*, 127 Atl. 133; *In re Scanlon's Estate*, 169 Atl. 106; *Sullivan* v. *Hess*, 241 Pa. 407; 88 Atl. 544. See also *Cook* v. *Lum*, 55 N. J. L. 373; 26 Atl. 803; *Bauernschmidt* v. *Bauernschmidt*, 97 Md. 35; 54 Atl. 637, which quotes from *Walsh's Appeal*, 122 Pa. 177; 15 Atl. 470.

In the last analysis the determination of the issue herein depends upon whether petitioner has established elements (3) and (4) set forth in the above quotation from the *Weil* case. These essentials are a *clear and unmistakable intention* on the part of Maxwell to absolutely and irrevocably divest himself of the title, dominion, and control of the stock, *in praesenti*, and the irrevocable transfer of the present legal title and of the *dominion* and *control* of the entire gift to the Stine sisters, so that Maxwell could exercise no further act of dominion or control over it.

We must first determine whether there was an intent to give. The evidence in this record fails to show a *clear and unmistakable intention* on the part of Maxwell to absolutely and irrevocably divest himself of the title, dominion, and control of this stock. The formal transfers of the stock on the books of the corporation, under all the facts and circumstances, were insufficient to establish a donative intent. *In re Raub's Estate*, 286 Pa. 575; 134 Atl. 451; *Southern Industrial Institute* v. *Marsh*, 15 Fed. (2d) 347; certiorari denied, 273 U. S. 747; *In re Crawford*, 21 N. E. 692. The burden of proving

an intention to make a gift is upon the petitioners, *McConville* v. *Ingham*, 268 Pa. 507; 112 Atl. 85, and it must be coupled with delivery, which is the manual act that executes the purpose originally formed. However, since the quantum of evidence necessary to establish a gift is less where a relationship such as that of parent and child exists, *Northern Trust Co.* v. *Huber*, 274 Pa. 329; 118 Atl. 217; *Yeager's Estate*, 273 Pa. 359; 117 Atl. 67, we must determine whether the evidence here is sufficient to establish such intent.

Transfer and delivery of property, including corporate stock, are not conclusive upon the question of intent where change of title is involved from the standpoint of taxation; and surrounding circumstances, including subsequent acts of the taxpayer, often establish intent more clearly than parol evidence. *Wishon-Watson Co.* v. *Commissioner*, 66 Fed. (2d) 52, and *Commissioner* v. *Dyer*, 74 Fed. (2d) 685. See *In re Raub's Estate, supra.*

The record contains no expressions by Maxwell to friends or his nieces showing an *intent* at the time of the transfer to make an outright gift to his nieces of this stock. Josephine Stine testified that her uncle told her several times that she "would be well taken care of", but we can not interpret this testimony to mean a specific intent on the part of Maxwell to give each of his nieces 1,000 shares of stock outright on or about March 30, 1928.

In our view the proof establishes the absence of any such intent. It indicates that Maxwell was motivated otherwise in formally transferring the stock. Based on respondent's determination, Maxwell's net taxable income for 1928 would be increased over $62,000 by the sale of these 2,000 shares of stock, but if transferred to his nieces, and the sale was consummated with them as stockholders of record, the taxable profits from his total holdings of the company's stock might be split three ways. Maxwell was a banker, presumably conversant with the income tax laws and aware of the surtax provisions thereof. It was to his interest to eliminate profits from this sale for tax purposes. An apparent sale by his nieces would still give him control over the proceeds, because he controlled and dominated them.

Furthermore, the proof is open to the inference that these purported gifts, although formally transferred on the corporate books, were merely devices to reduce the amount of Maxwell's tax liability. See *Liberty Service Corporation*, 28 B. T. A. 1067; affirmed in *Liberty Service Corporation* v. *Commissioner*, 77 Fed. (2d) 94, which deals with the sale of similar stock owned by the Liberty Service Corporation; and also *Gregory* v. *Helvering*, 293 U. S. 465.

Our attention has not been called to a case which holds that a formal transfer on the books of a corporation is sufficient, in and of

itself, to establish an *intent* to make a gift *inter vivos*, under facts and circumstances such as are present in the instant proceeding; and we are unwilling to so hold. Yet, that is the principal basis upon which petitioners rest their case.

Secondly, while it is clear that Maxwell formally transferred legal title to the stock, nevertheless, he continued to exercise *control and dominion* over the stock after the transfer, and over the proceeds after the sale. His actions at the time of the alleged gift are entirely inconsistent with the usual actions of a benefactor toward the recipients of his bounty. Maxwell failed to tell his nieces at any time that he had made a gift of stock to them. There is no evidence that he told his business associates of the gift. He did not let his nieces see the certificates of stock which stood in their names on the books of the corporation, nor did he turn the certificates over to them. When he requested Dollie Stine to sign a paper for him, he offered no explanation and made no other comment; all she knew about what she signed was that it was a little piece of white paper. That was the first intimation to Dollie Stine of the transfer. Josephine Stine denied all knowledge of ever signing the power of attorney. Again, when Maxwell came to Dollie Stine to withdraw the proceeds of the sale, he had an opportunity to tell her of his gift, but he made no disclosure. He requested her to sign two checks for large amounts in favor of payees he named without explaining his reasons therefor. That she did this without question, although her bank account had rarely been above $100, only serves to emphasize how completely she was controlled and dominated by her uncle and how willing she was to obey him. Throughout this whole transaction we find the Stine sisters obeying the requests of their uncle and acting as he directed. It would be unsound to hold, under these circumstances, that Maxwell ever irrevocably relinquished control and dominion over these 2,000 shares of stock. *J. L. McInerney*, 29 B. T. A. 1.

The record shows that Maxwell executed two trust deeds, one for each of his nieces, transferring to the trustee therein named, the Moshannon National Bank, certain securities that he had purchased. It appears from the separate verified bills of complaint in equity, in which are incorporated copies of the trust agreements, filed against Moshannon National Bank and others by the Stine sisters, that such trusts were created and that the ultimate proceeds from the sales of the stock were used to purchase the securities which Maxwell placed in trust. These bills of complaint, hereinafter referred to, were offered in evidence by the petitioners and without objection. In our opinion, Maxwell could not create trusts in favor of his nieces out of funds that already belonged to them. By the

very terms of the trust instruments Maxwell declared that, "I * * * do hereby give, assign and transfer * * *." This declaration is entirely inconsistent with the theory of a prior complete and irrevocable relinquishment of dominion and control over the stock or the proceeds thereof.

Furthermore, it may be pointed out that when Maxwell died in September 1928, he had in his possession, so far as the evidence shows, more than $16,000 of the $51,330 check signed by Josephine Stine, and $1,330 of the proceeds of the checks signed by Dollie Stine.

The foregoing discussion discloses that Maxwell had no clear and unmistakable intention to make a gift, and it establishes further that there was no irrevocable transfer of the dominion and control over the stock to the donees, so that the donor could exercise no further act of dominion or control over it. Since these two essential elements of a valid gift *inter vivos* are missing, we can not make a finding of fact or hold that decedent made a valid and completed gift to his nieces of the stock in question.

In this view, we deem it unnecessary to consider the other essential elements of a valid gift.

We have not overlooked *Fidelity-Philadelphia Trust Co., Executor*, 16 B. T. A. 1214; *J. M. Walsh*, 18 B. T. A. 571; *D. B. Malernee*, 31 B. T. A. 662; and *J. M. Kessler*, 31 B. T. A. 849. Kessler announced to a third party that he was going to make a gift to his wife and advised her of the gift by letter. She acknowledged the gift. It was agreed between them that he was to look after her interests for her. He endorsed the certificate of interest and delivered it to a fourth party with instructions that it be held for the benefit of his wife, directed that the note derived from the sale of the subject of the gift be made payable to her, and deposited in a bank to her account the proceeds derived from the payment of the note. There was no countervailing evidence upon the subject of delivery of possession and surrender of dominion. The only question presented was whether he made a gift of his interest before the sale or a gift of the proceeds after the sale; and we merely held that a gift of his interest was made before the sale. As appears from our findings, the facts and circumstances in the instant proceeding are quite different. The other three cases are even more readily distinguishable.

Petitioners cite the Uniform Stock Transfer Act adopted by Pennsylvania as of January 1, 1912, Pa. Stat. 1920, secs. 5700–5723, and *In re Connell's Estate*, 282 Pa. 561; 128 Atl. 503, which interprets the same. The court there held that the provisions of this act, which prescribe that title shall pass by endorsement as of the time of

registration of the transfer, cannot affect the rights of the parties, as between themselves, because such provisions were evidently inserted for the protection of the corporation itself, so it could safely deal with the registered owner of stock in dividend and other matters. This case and the act are of no assistance in determining whether, as between the parties, there was a gift of the stock. See *In re Raubs' Estate, supra.* Cf. *Packer* v. *Clemson, supra.*

Petitioners lay stress upon the allegations contained in separate bills of complaint in equity brought by Dollie Stine and Josephine Stine against the Moshannan National Bank wherein it is alleged by each complainant, verified under oath, that she became the owner, by gift, on or about April 2, 1928, of 1,000 shares of the common capital stock of the company. The bills of complaint were brought to reform the trusts created by Maxwell in favor of the Stine sisters and by a consent decree in compromise of their claims both trusts were reformed. The question of whether 1,000 shares of the company's stock was given by Maxwell to each of his nieces was not in issue. The allegation of ownership by gift was a conclusion of law; the facts upon which this allegation was based were not pleaded or tried. It is elementary that allegations contained in pleadings are not, in a situation like this, proof of the conclusions alleged. Petitioners assert that such statements are admissions against interest; but the Stine sisters are not parties litigant herein. They were called as witnesses and such allegations could only be used for purposes of impeaching their testimony because of prior contradictory statements. Furthermore, the Stine sisters explained their prior allegations by stating that they alleged ownership of the stock because it stood in their names on the books of the corporation. It appears that the pleadings were prepared by counsel and signed by each of the Stine sisters upon his advice and in reliance thereon. In view of these explanations, the nature of the pleadings, and the settlement of the suits by consent, we are unwilling to attach as much weight to this evidence as petitioners contend for, or hold that they have been thereby impeached as witnesses.

At the hearing petitioners introduced a copy of a petition filed by Josephine Stine's guardian in the Orphans' Court of Clearfield County, wherein her guardian made certain allegations relative to her banking relations, her rights under an insurance trust, and her rights under the $35,000 trust created by Maxwell for her. The guardian asked the court to authorize the acceptance of an offer in compromise of her claims from the administrators of Maxwell's estate, payment of which would relieve the Moshannon National Bank and the estate from any further liability to Josephine Stine.

The court approved acceptance of the offer by the guardian, so that the allegations contained in the petition were never settled by court decision, but were disposed of by the compromise settlement. Josephine Stine never signed or verified the petition, or other papers, in that proceeding, and she has not been impeached, as a witness, by them in the instant proceeding.

It may not be amiss to point out that in *Edgar M. Carnrick*, 21 B. T. A. 12, we stated:

\* \* \* Irrespective of what may be the force and effect in proceedings before the Board of Judgments of State courts *upon matters of fact after a contest*, cf. *Charles L. Suhr*, 4 B. T. A. 1198; *Guaranty State Bank*, 12 B. T. A. 543, there is no doubt that *a formal settlement* of an executor's *uncontested account* is not, as against the respondent here, *res adjudicata* of the inventory or its valuation, nor does it alone establish a *prima facie* case of their correctness. [Emphasis supplied.]

To similar effect, in principle, is *Fidelity & Columbia Trust Co.* v. *Lucas*, 52 Fed. (2d) 298; reversed on other grounds at 66 Fed. (2d) 116. Cf. *Edward T. Blair*, 31 B. T. A. 1192.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

MURDOCK, concurring: I concur in the results reached in this case and in the closely related cases of *Dollie M. Stine* and *M. Josephine Stine*, 32 B. T. A. 482. If the cases were considered together, as I think they should be, instead of separately, the correctness of the results would be even more apparent.

LEECH: I agree with the foregoing comment. However, in my judgment, the result reached in the majority opinion is correct—not for the reason which, among others, that opinion indicates, Maxwell could not have accomplished a completed gift of the stock to the Stine sisters since *they* were under his personal domination—but is correct only because he did not here intend a gift. This record apparently establishes, at least by implication, that the Stine sisters were merely agents for Maxwell in the sale of the stock upon which the disputed deficiency arises. Thus, the estate of Maxwell, the principal, was the taxable recipient of the proceeds of that sale.

SMITH and SEAWELL agree with the above.