WILLIAM H. CAMPBELL, JR. and PEGGY L. CAMPBELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Campbell v. Commissioner
Docket No. 9804-77.
United States Tax Court
T.C. Memo 1979-411; 1979 Tax Ct. Memo LEXIS 116; 39 T.C.M. (CCH) 287; T.C.M. (RIA) 79411; September 27, 1979, Filed *116 In 1971, Ps purchased two certificates evidencing securities in a corporation, which were issued in the names of their sons. The certificates were never delivered to the sons, and Ps reported all income from such securities on their joint returns. In 1975, the securities became worthless, and Ps claimed a bad debt deduction. Held, the securities represented stock, and Ps were the owners thereof. Ps are entitled to a deduction for worthless securities; they are not entitled to a deduction for a bad debt or for a theft loss. William H. Campbell, Jr., pro se. John W. Dierker, for the respondent. SIMPSON
*118 MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $1,524.80 in the petitioners' Federal income tax for 1975. The issues for decision are whether the petitioners were the owners of certain securities, whether such securities constituted stock, and whether, as a result of such securities becoming worthless, they are entitled to a deduction for a worthless security within the meaning of section 165(g) of the Internal Revenue Code of 1954, [1] for a bad debt within the meaning of section 166, or for a theft loss within the meaning of section 165(c)(3). FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, William H. Campbell, Jr., and Peggy L. Campbell, husband and wife, maintained their legal residence in Dallas, Tex., at the time they filed the petition in this case. They filed their joint Federal income tax return for 1975 with the Internal Revenue Service Center at Austin, Tex. In January 1971, the petitioners paid $3,000 in exchange *119 for 100 shares of Union Credit Control, Inc. (Union), a Texas corporation, represented by certificate number 6. In February 1971, the petitioners paid $3,000 in exchange for an additional 100 shares of Union, represented by certificate number 7. Both certificates were registered in the names of the petitioners' sons, Michael H. Campbell and William David Campbell, as tenants in common. Certificate number 6 bore the corporate seal, but was not signed by an authorized corporate officer. Certificate number 7 was signed, but did not bear the corporate seal. Also, a second certificate number 7 was issued to a Henry P. Ainsworth representing 25 shares of Union. The certificates purchased by the petitioners were never delivered to their sons. From the time of purchase, the petitioners retained physical control of the certificates. Although the sons were aware that the certificates were purchased in their names, they never considered that they owned the securities. Furthermore, the petitioners reported the total income from the securities on their joint income tax returns: in 1972, $400 was reported as interest income from Union, and in 174, $150 was reported as interest income from *120 Gary W. McClelland, president of Union. No income was received from Union during 1973. The certificates were transmitted by letters directed to the petitioners' sons and signed by Mr. McClelland. In such letters, Mr. McClelland confirmed a prior oral agreement whereby dividends equal to at least 10 percent of the amount invested would be paid annually commencing one year after the date of purchase. In April of 1974, Mr. McClelland sold for $200,000 his 60-percent interest in Union (600 out of 1,000 shares) to Glenn A. Hardway. The purchase agreement provided that Mr. McClelland was to receive 10 percent of the corporation's gross monthly receipts until the purchase price was paid. No agreement was made to purchase the other shareholders' interests in Union. Yet, in an effort to recoup the other shareholders' investments, Mr. McClelland, by letters dated June 6, 1974, directed Mr. Hardway to pay 25 percent of the commissions due to Mr. McClelland to each of the petitioners' sons until each son received $3,000 plus 10 percent interest. However, such payments were not to commence until Mr. Hardway fulfilled a commitment to Mr. McClelland's father. At the time of trial, no *121 funds had been received by the petitioners or their sons under this arrangement by Mr. McClelland. Union's charter was forfeited as of December 2, 1974, and it is stipulated by the parties that the securities evidenced by certificates numbers 6 and 7 became worthless in 1975. On their Federal income tax return for 1975, the petitioners treated the worthlessness of the securities as a bad debt and deducted $6,000 as an ordinary loss as a result thereof. In his notice of deficiency, the Commissioner determined that the petitioners were not the owners of such securities and disallowed the deduction in full. OPINION In order to decide whether the petitioners are entitled to a deduction arising from the worthlessness of the Union securities, we must first determine the ownership of such securities. There are several requisites of a valid inter vivos gift. They include a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject matter of the gift inpraesenti; the irrevocable transfer *122 of the present legal title and of the dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion and control over it; and a delivery to the donee of the subject of the gift or of the most effective means of commanding the dominion of it. Estate of Hite v. Commissioner,49 T.C. 580, 594 (1968). The Commissioner contends that the mere issuance of the certificates in the names of the petitioners' sons is sufficient to constitute a completed gift and that acceptance in presumed in the absence of a specific rejection by the donees. We view the law differently. In Weil v. Commissioner,82 F 2d 561, 563 (1936), affg. 31 B.T.A. 899 (1934), cert. denied 299 U.S. 552 (1936), the Fifth Circuit said: Generally a donor must go as far as the nature of the property and the circumstances reasonably permit in parting with dominion and making the gift irrevocable. * * * If the donor intends to give, and even goes so far as to transfer stock on the books of the company, but intends first to do something else and retains control of the transferred stock for that purpose, there *123 is no completed gift. * * * See also Jackson v. Commissioner,32 B.T.A. 470 (1935). The mere transfer of shares of stock on the books of the corporation, without any delivery of the new certificates and without any intention on the part of the transferor to make present gifts of the shares, does not constitute a gift. Bucholz v. Commissioner,13 T.C. 201 (1949). The law in Texas appears to be the same. Ellsworth v. Ellsworth,151 S.W. 2d 628, 632 (Tex. Civ. Ct. App. 1941). It is true that there are cases which hold that under some circumstances a valid gift of corporate stock may be effectuated by a transfer of the shares on the books of the corporation. See Marshall v. Commissioner,57 F. 2d 633 (6th Cir. 1932), revg. 19 B.T.A. 1260 (1930), cert. denied 287 U.S. 621 (1932); Lawton v. Commissioner,164 F. 2d 380 (6th Cir. 1947), remg. 6 T.C. 1093 (1946). However, in those cases, there were circumstances confirming an intention to make a present gift. Bucholz v. Commissioner,supra. *124 The unrefuted testimony of Mr. Campbell and the petitioners' sons is that, although the certificates were registered in the names of Michael and William, such certificates were never delivered to them. Thus, there was no delivery of the certificates evidencing ownership of the securities. Weil v. Commissioner,supra.
Moreover, Mr. Campbell testified that the petitioners did not intend their investment in Union to be a gift to their sons, and the sons testified that they never believed that a gift had been made to them. We have previously held in Anderson v. Commissioner,5 T.C. 443 (1945), affd. 164 F. 2d 870 (7th Cir. 1947), cert. denied 334 U.S. 819 (1948), and in Jackson v. Commissioner,supra, that the subsequent acts of the "donors" should be considered in construing their intent. Although we do not know what led the petitioners to have the certificates registered in the names of their sons, the facts that the petitioners did not deliver the certificates to their sons and that the petitioners reported the income from the securities on their returns convince us that the petitioners *125 did not intend at any time to make a present gift of the securities to their sons. See Bendix v. Commissioner,14 T.C. 681, 686 (1950). Accordingly, we hold that the petitioners are the owners of the securities evidenced by certificates numbers 6 and 7. Having reached such conclusion, we now come to the issue of whether the securities constitute stock or debt. The parties agree that the securities became worthless in 1975. The petitioners treated the securities as a debt and claimed a bad debt deduction under section 166(a) for the entire cost of them. [2] On the other hand, the Commissioner maintains that the securities constitute stock so that any loss is limited by the provisions of section 165(g)(1), which provides: (1) General rule.--If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall, for purposes of this subtitle, be treated as a loss from *126 the sale or exchange, on the last day of the taxable year, of a capital asset. For such purpose, section 165(g)(2)(A) defines a security as "a share of stock in a corporation." We agree with the Commissioner's position. Mr. Campbell testified that the petitioners considered the certificates as evidence of a loan to Union, and they reported the income received from Union as interest on their 1972 and 1974 returns. However, the record firmly establishes that certificates numbers 6 and 7 were evidence of stock in, rather than a promissory note of, Union. The certificates themselves declare that they represent shares of the corporation. In addition, the transmittal letters accompanying such certificates referred to the promised return as dividends. Accordingly, we hold that the securities owned by the petitioners in Union are shares of stock in that corporation and that such securities are subject to the limitation of section 165(g)(1). As these securities are capital assets, the petitioners are entitled to claim a long-term capital loss as a result of the worthlessness of such securities. At trial and on brief, the petitioners argue that they should be allowed a deduction *127 for a theft loss under section 165(c)(3) and (e). The petitioners' theory appears to be that Mr. McClelland, president of Union, made false representations regarding the 10-percent return promised the petitioners, and that the stock certificates were intentionally issued in an invalid manner. These actions, it is alleged, constitute a fraudulent taking of the petitioners' investment in Union. In order to determine whether a theft has occurred for tax purposes, we must look to the law of the jurisdiction where the loss arose. Edwards v. Bromberg,232 F. 2d 107 (5th Cir. 1956); Monteleone v. Commissioner,34 T.C. 688 (1960). Under the provisions of the Texas Penal Code, whether we construe the petitioners' allegations as constituting common law larceny, larceny by trick or false pretense, embezzlement, or swindling, an essential element of each of these offenses is a finding of an intent to criminally acquire the petitioners' property. [3] See Edwards v. Bromberg,supra at 110; Muncie v. Commissioner,18 T.C. 849 (1952); *128 sec. 1.165-8(d), Income Tax Regs.
Mr. McClelland may have conducted the affairs of Union in a somewhat careless manner. However, the record does not support a finding of an intent to defraud the petitioners. No evidence was introduced that the funds invested by the petitioners were diverted from the corporation. See Vietzke v. Commissioner,37 T.C. 504 (1961). In contrast, it appears that at the time the petitioners purchased their stock in Union, the company may have had a reasonable prospect of fulfilling the promised return on the investment. Whether the subsequent failure of the company resulted from mismanagement, unforeseen economic circumstances, or fraud is not established. Furthermore, no evidence was presented as to a criminal conviction having been obtained in connection with these transactions. A conviction for theft is not necessary to sustain a theft loss deduction where the theft was clearly shown by other evidence ( *129 Jones v. Commissioner,24 T.C. 525 (1955)), but the absence of a conviction may indicate that a theft did not in fact occur ( Arcade Realty Co. v. Commissioner,35 T.C. 256, 265 (1960)). The petitioners emphasize the improper form in which the certificates were issued and the fact that a duplicate certificate number 7 was issued to a third party. These facts, they argue, are indicative of an intent to defraud. However, such facts may have been merely coincidental or mistakes arising from Mr. McClelland's naivete in the issuance of corporate securities. As we stated in Allen v. Commissioner,16 T.C. 163, 166 (1951): If the reasonable inferences from the evidence point to theft, the proponent is entitled to prevail. If the contrary be true and reasonable inferences point to another conclusion, the proponent must fail. If the evidence is in equipoise preponderating neither to the one nor the other conclusion, petitioner has not carried her burden. In determining whether a theft has occurred, the petitioners have the burden of proof. *130 Bonney v. Commissioner,247 F. 2d 237 (2d Cir. 1957), affg. Towers v. Commissioner,24 T.C. 199 (1955), cert. denied 355 U.S. 906 (1957). On the record before us, the petitioners have not met their burden. Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.↩
2. At trial and on brief, the petitioners have not discussed whether the deduction is attributable to a business or nonbusiness bad debt. Sec. 166(d).↩
3. Tex. Penal Code arts. 1410, 1413, 1534, 1545, 1548--all repealed in 1974 and replaced by sec. 31.03↩